UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT JAHODA and THOMAS KLAUS, <br><br> Plaintiffs, <br><br> v. <br><br> DISCOVERY, INC., and DISCOVERY DIGITAL VENTURES, LLC, <br><br> Defendants. | Case No. 2:21-cv-229 |

## COMPLAINT

Plaintiffs Robert Jahoda and Thomas Klaus (collectively, "Plaintiffs"), through their undersigned counsel, bring this complaint against Defendants Discovery, Inc., and Discovery Digital Ventures, LLC (collectively, "Discovery" or "Defendants"), and assert as follows:

## INTRODUCTION

1. Plaintiffs bring this action against Defendants under Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.* and its implementing regulations, in connection with Defendants' failure to offer blind patrons the full and equal enjoyment of their on-demand streaming entertainment services.

2. Defendants offer consumers on-demand video streaming services through their website and mobile application, Discovery Plus, where consumers can access a library of TV shows and movies to watch at their leisure.

3. Defendants are responsible for the policies, practices, and procedures concerning their streaming services' development and maintenance.

4. Defendants, however, fail to offer audio description tracks – an audio track that blind and visually impaired people need access to in order to experience the exclusively visual portions of the show or movie enjoyed by consumers without visual impairments – with their video content.

5. Plaintiffs are individuals with visual disabilities who, at all times relevant for the purposes of this action, have been legally disabled as defined by the ADA, 42 U.S.C. § 12102(2).

6. Plaintiffs and others with visual disabilities who want to enjoy on-demand videos with audio descriptions must use streaming services other than Defendants'.

7. Although audio descriptions are widely available for TV shows and movies, Defendants refuse to make those audio descriptions available to their consumers through their on-demand streaming services.

8. Because customers with visual disabilities cannot equally enjoy Discovery's TV shows or movies without audio descriptions, Defendants deprive them of the same options, privileges, and advantages that they offer to people who can see.

9. Plaintiffs seek the following declaratory and injunctive relief: (1) a declaration that Defendants' lack of audio descriptions violates the ADA as described in this complaint; and, (2) an injunction requiring Defendants to provide audio descriptions and a mechanism to choose audio descriptions for their on-demand streaming services so that they are fully and independently accessible to blind or other vision impaired individuals.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

11. Plaintiffs' claims asserted in this complaint arose in this judicial district, and Defendants do substantial business in this judicial district.

12. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

13. Plaintiff Robert Jahoda is and, at all times relevant hereto, was a resident of this District. Plaintiff is legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Mr. Jahoda knows that audio descriptions are not available through Defendants' streaming services. He has not subscribed to Discovery Plus because he knows trying to use the services would be futile.

14. Plaintiff Thomas Klaus is and, at all times relevant hereto, was a resident of Harrisburg, Pennsylvania. Plaintiff is legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*. Mr. Klaus knows that audio descriptions are not available through Defendant's streaming services. He has not subscribed to Discovery Plus because he knows trying to use the services would be futile.

15. Defendant Discovery, Inc., is a global leader in real life entertainment with its headquarters in Silver Spring, Maryland.

16. Defendant Discovery Digital Ventures, LLC, is a subsidiary of Discovery, Inc., that provides on-demand streaming services through Discovery Plus, and has its headquarters in Silver Spring, Maryland.

## FACTUAL ALLEGATIONS

17. Discovery offers digital video-streaming services to millions of Americans through its platform, Discovery Plus.

18. Through Discovery Plus' on-demand streaming services, users have access to "more than 55,000 episodes of 2,500+ current and classic shows from the most beloved TV brands, including HGTV, Food Network, TLC, ID, Animal Planet, Discovery Channel and more."[1]

19. Users can browse Discovery Plus' vast video selection, pick a program to stream, and start watching in the comfort of their own home within a matter of minutes.

20. In order to have access to and stream the content offered through Discovery Plus' on-demand streaming service, customers must register for a Discovery Plus account, or may access content by watching with someone who already has a subscription.

21. Discovery Plus offers two tiers of service that users can choose from. The Discovery Plus plan is $4.99 per month and contains advertisements; the Discovery Plus (Ad-Free) plan is $6.99 per month and does not contain advertisements.

22. Discovery Plus users can access the on-demand streaming services through various web browsers, mobile or tablet devices, smart TV's, and streaming devices.[2]

23. Though Defendants may have centralized policies regarding the maintenance and operation of their streaming services, Defendants have never had a plan or policy that is reasonably

---

[1] https://www.discoveryplus.com/ (last accessed February 17, 2021).
[2] *Id.*

4

calculated to make their streaming services fully accessible to, and independently made usable by, individuals with visual disabilities.

24. Discovery Plus' blind and visually impaired on-demand users and potential users do not have full access to Discovery Plus' video-streaming services because Discovery Plus does not provide audio description tracks for video content provided on its platform.

25. Audio description is an auxiliary aid that allows blind and visually impaired people to have a full audio-visual experience.[3] It is an audio track that narrates the key visual elements of video content so that blind and visually impaired people can experience significant actions and text-based information provided onscreen. Audio descriptions provide, for example, descriptions of scenes, settings, costumes, body language, and other non-verbal cues that would otherwise be missed by a person who is blind or visually impaired, but can be seen by those without visual impairment.

26. Similar to closed captioning and subtitles, video providers offer audio description tracks as an option for the consumer to select during a TV show or movie.

27. Discovery Plus does not provide audio description tracks as an option for its on-demand users.

28. Because Discovery Plus does not provide audio description tracks, Plaintiffs have not signed up for streaming service that they otherwise would be able to enjoy.

29. Plaintiffs are frustrated that Defendants deny them and other customers with visual disabilities the same convenience of streaming TV shows and movies that they provide to customers without visual disabilities.

---

[3] Congress defined auxiliary aids and services to include "…taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments[.]" 42 U.S.C. § 12103(1)(B).

30. This technology is not novel or unique. Netflix, Amazon Prime, and Hulu are just a few examples of streaming services that offer audio descriptions for their content. Major production studios also now provide audio description tracks for wide-released features, which are distributed with the film.

31. Pursuant to the Twenty-First Century Communications and Video Accessibility Act of 2010 ("CVAA"), many television channels, including Defendants', are required to provide audio description for a certain number of hours of prime-time content. *See* 47 C.F.R. § 79.3.

32. Defendants have the ability to provide audio descriptions over Discovery Plus but choose not to. Pursuant to their obligations under the CVAA, Defendants already provide audio description for many of the titles they make available to consumers via cable. Between January 26 and February 4 of this year, Defendants aired audio description enabled episodes of the following programs over cable, but not over their streaming services:

   a) Moonshiners;

   b) Moonshiners: Master Distiller;

   c) Six Degrees with Mike Rowe;

   d) Expedition Unknown;

   e) Lone Star Law;

   f) Gold Rush: White Water;

   g) Naked and Afraid;

   h) Alaska: The Last Frontier;

   i) Car Kings;

   j) Street Outlaws; and

   k) BattleBots.

33. Despite there being audio description tracks available for much of the content that Discovery Plus has in its on-demand library, including the above listed titles, Defendants fail to provide these audio description tracks to their users via their streaming services.

34. Plaintiffs seek the same full and equal access to Defendants' on-demand streaming content that Defendants afford to people without vision loss.

35. Absent the relief requested in this matter, Plaintiffs and individuals with visual disabilities will continue to be denied full and equal enjoyment of Defendants' streaming services.

## SUBSTANTIVE VIOLATION

### Title III of the ADA, 42 U.S.C. § 12181 *et seq.*

36. The allegations set forth in the previous paragraphs are incorporated by reference.

37. Defendants' on-demand streaming platform is a place of public accommodation as defined by the ADA because it is, or is a part of, a "place of exhibition or entertainment," a "sales or rental establishment," a "service establishment," a "library," a "gallery," and/or a "place of public display or collection." 28 C.F.R. § 36.104; 42 U.S.C. § 12181(7), and Defendants own, operate, and control the streaming platform. *See Gniewkowski v. Lettuce Entertain You Enter.*, 251 F. Supp. 3d 908 (W.D. Pa. 2017); *see also West v. Docusign, Inc.*, 2019 WL 3843054 (W.D. Pa. 2019).

38. Pursuant to Title III, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

39. Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated or otherwise treated

differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. *Id.*

40. Thus, to the extent Defendants do not provide Plaintiffs with appropriate auxiliary aids or full and equal access to its on-demand streaming services, they have violated the ADA.

41. Auxiliary aids and services include "effective methods of making visually delivered materials available to individuals with visual impairments" such as audio description tracks. 42 U.S.C. § 12103(1)(B); *see also* 28 C.F.R. Part 36, Appendix C, Section 36.303 (noting that audio description services "may be considered appropriate auxiliary aids and services").

42. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. §§ 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011).

43. By failing to provide its on-demand entertainment content and services in a manner that is compatible with auxiliary aids, Defendants have engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

    a) denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services available through their on-demand streaming services;

b) affording individuals with visual disabilities access to their on-demand streaming services that is not equal to, or as effective as, that afforded to others;

c) utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control;

d) denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others; and/or

e) failing to make reasonable modifications in policies, practices, or procedures where necessary to afford their services, privileges, advantages, or accommodations to individuals with visual disabilities.

44. Defendants have discriminated, and continue to discriminate, against Plaintiffs by failing to provide auxiliary aids and services such as audio descriptions and not making their streaming services fully accessible to, and independently usable by, individuals with visual disabilities.

45. Because of Defendants' denial of full and equal access to blind or visually impaired users, Plaintiffs have not signed up for or been able to enjoy Discovery Plus' on-demand streaming services.

46. Defendants ongoing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiffs and other individuals with visual disabilities.

47. Plaintiffs' claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

48. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request relief as follows:

    a.    A Declaratory Judgment that at the commencement of this action Defendants were in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants took no action that was reasonably calculated to ensure that their streaming services are fully accessible to, and independently usable by, individuals with visual disabilities;

    b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendants to take all steps necessary to bring their streaming service into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that their streaming services are fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendants have adopted and are following an institutional policy that will in fact cause them to remain fully in compliance with the law;

    c.    Payment of costs of suit;

    d.    Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendants' compliance with the judgment. *See People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 235 (3d Cir. 2008) ("This Court, like other Courts of Appeals, allows fees to be awarded for monitoring and enforcing Court orders and judgments."); *see also Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, Case No. 2:16-cv01898-

AJS (W.D. Pa. Jan. 11, 2018) (ECF 191); *see also Access Now, Inc. v. Lax World, LLC*, No. 1:17-cv-10976-DJC (D. Mass. Apr. 17, 2018) (ECF 11);

      e.      Whatever other relief the Court deems just, equitable, and appropriate; and

      f.      An Order retaining jurisdiction over this case until Defendants have complied with the Court's Orders.

Dated: February 17, 2021

Respectfully Submitted,

By: /s/ *R. Bruce Carlson*
R. Bruce Carlson
Nicholas A. Colella
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243
Fax: 412-231-0246
bcarlson@carlsonlynch.com
ncolella@carlsonlynch.com

*Counsel for Plaintiffs*